FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

CASE NO. 8:19mc 425 35 cpT

| | |
|---|---|
| ALL-TAG CORP., | ) |
| | ) Action Pending in the Southern District |
| Plaintiff, | ) of Florida |
| | ) |
| v. | ) Case No. 17 cv 81261 |
| | ) |
| CHECKPOINT SYSTEMS, INC., | ) Judge William P. Dimitrouleas |
| | ) Magistrate Judge William Matthewman |
| Defendant. | ) |
| | ) |

**CHECKPOINT SYSTEMS, INC.'S MOTION TO COMPEL NON-PARTY
NEDAP, INC. TO PRODUCE ALL DOCUMENTS RESPONSIVE
TO SUBPOENA AND INCORPORATED MEMORANDUM OF LAW**

Checkpoint Systems, Inc. ("Checkpoint") moves to compel Nedap, Inc. ("Nedap") to produce all information responsive to the Amended Subpoena to Produce Documents ("Subpoena"), attached as Exhibit A. Checkpoint served the Subpoena on Nedap for limited documents relevant to Checkpoint's defense in this antitrust matter, but despite numerous communications between the parties and Checkpoint's exhaustive efforts to facilitate Nedap's compliance, Checkpoint remains without relevant information critical to its defense. Checkpoint now seeks an order compelling Nedap to fully comply with the Subpoena.

## I. RELEVANT BACKGROUND

All-Tag Corp. ("All-Tag") accuses Checkpoint of violating antitrust laws by allegedly foreclosing competitors from selling labels used with RF Electronic Article Surveillance ("EAS") systems by leveraging its "unique position" as a provider of EAS towers, deactivators, installation and service. All-Tag alleges, among other things, that Checkpoint uses its dominance in RF EAS to foreclose it and other competitors from selling RF EAS labels in the Relevant Markets it has defined (i.e., retailers with certain EAS systems already installed; and drug stores, grocery stores and stores selling small items), and that Checkpoint has illegally bundled its EAS products with other products and services that competitors cannot provide. (D.E. 35; ¶¶ 42-53). All-Tag further alleges that Checkpoint engaged in deceptive advertising through its use of performance studies that indicated the inferior performance of All-Tag's RF labels. (*Id.* at ¶¶ 54-71).

All-Tag claims that only Checkpoint and All-Tag are "effective" competitors in the Relevant Markets but identified Nedap as a competitor who has sold EAS systems and labels and can provide nationwide servicing. *See* All-Tag's Fourth Supplemental Response to Checkpoint's Interrogatories, Nos. 3, 9, Exhibit B.[1] Nedap's website also promotes its sales of EAS systems and identifies entities that Nedap partners with to provide EAS systems, installation and servicing. *See* www.nedap-retail.com/us/partners/. In fact, Nedap and All-Tag have a close relationship and formed a joint venture to compete with Checkpoint in the Relevant Markets. At least one Nedap high level executive recently left Nedap and became an expert witness for All-Tag. Because Nedap is a competitor in the Relevant Market it has relevant information crucial to Checkpoint's defense.

---

[1] Any exhibits designated as "Highly Confidential" pursuant to the underlying matter will be filed under seal upon the entry of an appropriate protective order in this matter or transfer to the Southern District of Florida.

1

On January 4, 2019, Checkpoint served the Subpoena seeking information related to Nedap's presentations, sales, installation, and servicing of EAS systems and labels, and performance studies of All-Tag's products from September 1, 2012. (Ex. A.) Nedap served a blanket objection, attached as Exhibit C, on February 1, 2019.[2] Between February 1, 2019 and the filing of this motion, Checkpoint and Nedap have engaged in numerous communications (attached hereto as Group Exhibit D) and at least six telephonic meet and confers, during which Checkpoint detailed the relevance of all information sought by the Subpoena in an attempt to facilitate Nedap's compliance. Despite Checkpoint's efforts, on March 18, 2019, Nedap provided additional responses, produced incomplete information, and objected to the remaining requests, attached hereto as Exhibit E. In a final effort to resolve the dispute, Checkpoint responded to Nedap's objections on March 22, 2019, attached hereto as Exhibit F, and the parties engaged in a final meet and confer on March 25, 2019, at which time Nedap re-asserted its objections.

## II. NEDAP'S OBJECTIONS LACK MERIT AND SHOULD BE OVERRULED

The information sought by the Subpoena is relevant to Checkpoint's defense and is proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). Therefore, Nedap should be ordered to produce the requested information.

### a. Nedap's Claim of Confidentiality is Disingenuous (All Requests).

The overarching theme in the multiple teleconferences between Checkpoint and Nedap was Nedap's concern about the confidential nature of the information being sought by Checkpoint, a competitor. Due to its concern, Nedap refuses to provide the specific information requested by the Subpoena, such as the identification of entities and disclosure of agreements and pricing information, despite the existence of a Stipulated Protective Order. However, its position is undermined by the fact that Nedap freely shared its alleged "confidential commercial information" with All-Tag with limited protections in place. *See* Exhibit G.

Moreover, the fact that there is a Stipulated Protective Order (D.E. 55) in place is more than sufficient to protect the disclosure of Nedap's information. *See, e.g., Coty Inc. v. C. Lenu,*

---

[2] Nedap's general objection, as set forth in its initial letter and incorporated into its March 18, 2019 letter, claiming the Subpoena is "overbroad, unreasonable, and not likely to lead to the discovery of admissible evidence" and that Checkpoint sought "proprietary information" is improper and should be overruled. *Chavez v. Mercantil Commercebank, N.A.*, No. 10–23244–CIV, 2011 WL 1135005, at *2 (S.D. Fla. Mar. 28, 2011) (overruling "[n]onspecific, boilerplate objections" because they do not comply with S.D. L.R. 26.1(g)(3)(A).)

*Inc.*, Case No. 10-21812-CIV, 2010 WL 5392887, at *23 (S.D. Fla. Dec. 22, 2010) (subpoena requests for information regarding suppliers and customers enforced subject to the protections of the protective order). Courts routinely permit limited disclosure of competitor's information pursuant to a protective order in antitrust matters. *Direct Purchaser Class Plaintiffs v. Apotex Corp.*, Case No. 16-62492-MC-ZLOCH, 2017 WL 4230124, at *5 (S.D. Fla. May 15, 2017) (internal citations omitted). The Court entered the Protective Order to allow the Parties *and Third-Parties* to produce sensitive business information in order to promote discovery in the case. Indeed, it would be hard to fathom how an antitrust defendant could defend against allegations relating to customer foreclosure and market share, like those here, without access to sales and other information possessed by competitors. Accordingly, because business information is protected by the Stipulated Protective Order, Nedap has no basis to object to the Requests.

### b. Information Regarding Nedap's Sales, Servicing, and Installation of EAS Systems is Relevant to Checkpoint's Defense (Request Nos. 1, 2, 3, and 7).

Request numbers 1, 2, 3, and 7 seek information pertaining to Nedap's sales of EAS systems and labels to Retailers, including the identification of the Retailer, the date of sale, the quantity purchased, the purchase price and any related agreements for Nedap's sale, servicing, or installation of EAS systems and labels. (Ex. A.) In responding to the Subpoena, Nedap claims it does not sell to Retailers, but sells its products to integrators/partners who then sell to Retailers. Nedap then discloses that it did, in fact, sell to one Retailer but fails to provide the information requested by the Subpoena and only supplies some general approximations. (Ex. E). Similar to Nedap's disingenuous "confidentiality" concern, communications from Nedap produced by other parties demonstrate that Nedap was, in fact, selling directly to retailer. *See* e-mail correspondence, Exhibit H. And to the extent Nedap was selling through distributors, Nedap does not dispute that information regarding these sales is within its possession, custody or control and instead is forcing Checkpoint to enforce subpoenas against multiple distributors in various jurisdictions.

Nedap further claims it can only provide information for label sales from 2016 to present, and information for deactivators and antennas from 2018 to present; prior information needs to be obtained from "other international Nedap entities" because Nedap "is not able to provide [this information]." *Id.* Ultimately, Nedap provided aggregate information stating the number of labels and systems sold by year for only its U.S. entity, but refuses to provide the specific information requested by the Subpoena or information for its corporate parent, despite such information being within Nedap's possession, custody, or control.

3

In attempting to facilitate a response from Nedap, Checkpoint explained that it is seeking information related to, for example, instances where Nedap and Checkpoint competed for EAS business and provided Nedap with the names of potential such retailers. (Ex. D; Feb. 26, 2019 e-mail). Indeed, Checkpoint even provided Nedap's counsel examples demonstrating that All-Tag and Nedap worked together and against Checkpoint to obtain EAS business. (Ex. D; March 6, 2019 e-mail attachments). Therefore, Nedap's information related to its EAS business is directly relevant to Checkpoint's ability to rebut All-Tag's claims that Checkpoint foreclosed competition.

As Checkpoint explained, the provision of aggregate information is insufficient and deprives Checkpoint of information needed to rebut All-Tag's claims. Checkpoint needs to know the sales Nedap is making into each the Relevant Market subcategories All-Tag defined and aggregate numbers do not provide the necessary information or rebut All-Tag's assertion that certain customers are foreclosed from label sales. Moreover, Nedap's representations to the marketplace about its ability to provide EAS is squarely at issue in this case, particularly given that All Tag has asserted Checkpoint is uniquely position in the market and that Nedap (and others) are incapable of matching Checkpoint's EAS offering.

Additionally, Nedap's position that it cannot provide information relating to sales prior to 2016 because the information is from another Nedap entity is unavailing and yet another baseless attempt to avoid compliance. In seeking information from Nedap, Checkpoint is also entitled to information from Nedap N.V., Nedap's corporate parent. Because Nedap and "other international Nedap entities," including Nedap N.V., share a commonality of corporate structure and operations, Nedap is required to produce all responsive documents in its possession, custody or control, regardless of the Nedap entity involved. *See, e.g., Appleton Papers Inc. v. George A. Whiting Paper Co.*, Case No. 08-16, 2009 WL 2408898, at * 1 (E.D. Wis. July 31, 2009) (court ordered production of documents from four affiliated companies where corporations were members of "a labyrinthine group of corporations" with a common parent). Indeed, Nedap *already conceded* that documents of Nedap N.V. are within its possession, custody or control by producing results of the performance study conducted by Nedap N.V. in 2015. Accordingly, Nedap cannot deprive Checkpoint of documents by claiming the information must be obtained through Nedap N.V.

   c. **The Request for Agreements is Not Overbroad or Irrelevant (Request No. 4).**

Request 4 asks for Nedap's agreements with five entities (purported distributors) that provide EAS equipment or servicing. Nedap's objection, that the information is irrelevant, unduly

4

burdensome, and overbroad, amounts to no more than an unsupported boilerplate objection. To sustain an unduly burdensome objection, Nedap is required to "make a particular and specific demonstration of fact and cannot rely on simply conclusory assertions about the difficulty of complying with a discovery request." *Henderson v. Holiday CVS, L.L.C.*, 269 F.R.D. 682, 686 (S.D. Fla. 2010) (internal citation omitted). Nedap fails to explain how the request is "overbroad" and "unduly burdensome," and Checkpoint attempted to minimize Nedap's burden by limiting its request to five identified entities. In addition, the agreements sought are relevant because they would show that competitors are able to match the alleged bundling Checkpoint offers.

### d. Nedap Fails to Provide Complete Information (Request Nos. 6 and 8).

Request Nos. 6 and 8 seek marketing materials to Retailers and information and communications related to Nedap's performance testing of All-Tag's labels, respectively. In response, Nedap produced limited documents. For example, in response to No. 6, Nedap produced a single joint presentation to a "prospective retailer" (further undermining Nedap's position that it does not sell directly to Retailers) and redacted Retailer names. Nedap's marketing materials, such as presentations and proposals, will demonstrate the scope of Nedap's EAS capabilities and enable Checkpoint to undermine All-Tag's assertions that only Checkpoint can sell various products. Additionally, by redacting the names of the Retailers, Nedap is precluding Checkpoint from obtaining discovery from those entities, if necessary, or even more critically, obtaining evidence showing the instances where Nedap competed with Checkpoint for EAS business.

Similarly, with respect to Request No. 8, Nedap produced "certain testing data related to the performance of All-Tag's RF labels," but does not indicate whether Nedap's testing was limited to these three 2015 tests and does not provide any communications regarding the testing. Complete information related to Nedap's testing of All-Tag's RF labels, including communications regarding the testing and complete results of any test, is necessary to defend against All-Tag's claim that Checkpoint utilized false and/or misleading advertising.

### III. CONCLUSION

WHEREFORE, Defendant Checkpoint Systems, Inc. requests the entry of an order compelling Nedap, Inc. to produce all documents responsive to the Subpoena, overruling Nedap, Inc.'s objections thereto, and for such further relief as this Court deems just and proper.

### M.D. Fla. L.R. 3.01(g) and S.D. Fla. L.R. 7.1(a)(3)
### CERTIFICATE OF CONFERENCE OF COUNSEL

Pursuant to Middle District of Florida Local Rule 3.01(g) and Southern District of Florida Local Rule 7.1(a)(3), undersigned counsel hereby certifies that counsel for the movant has conferred with counsel for Nedap, Inc. in a good faith effort to resolve the issues but has been unable to resolve the issues.

Dated: April 9, 2019

/s/*Gavin C. Gaukroger*
Gavin C. Gaukroger
Fla. Bar. No. 76489
Charles H. Lichtman
Fla. Bar No. 501050
BERGER SINGERMAN LLP
350 East Las Olas Boulevard, Suite 1000
Fort Lauderdale, Florida 33301
Tel: (954) 525-9900
Fax: (954) 523-2872
ggaukroger@bergersingerman.com
clichtman@bergersingerman.com
DRT@bergersingerman.com

*Counsel for Checkpoint Systems, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 9th day of April 2019, a true and correct copy of the foregoing Checkpoint Systems, Inc.'s Motion to Compel Non-Party Nedap, Inc. to Produce All Documents Responsive to Subpoena and Incorporated Memorandum of Law was served via e-mail to counsel for non-party Nedap, Inc., Christopher Naveja, Esq., Saul Ewing Arnstein & Lehr, LLP, 161 North Clark Street, Suite 4200, Chicago, IL 60601, (312) 876-7140, christopher.naveja@saul.com, and to counsel for Plaintiff All-Tag as set forth below:

Damon Suden
Kelley Drye & Warren LLP
101 Park Avenue
New York, NY 10178
212-808-7800
Email: ahorvath@KelleyDrye.com
Email: dsuden@KelleyDrye.com

Julian Solotorovsky
Matthew C. Luzadder
Kelley Drye & Warren LLP
333 West Wacker Drive
Chicago, IL 60606
312-857-7070
Email: jsolotorovsky@KelleyDrye.com
Email: mluzadder@kelleydrye.com

William A. MacLeod
Kelley Drye & Warren LLP
3050 K Street NW, Suite 400
Washington, DC 20007
202-342-8811
Email: wmacleod@kelleydrye.com

Christopher W. Kammerer
John F. Mariani
Kammerer Mariani PLLC
1601 Forum Place, Suite 500
West Palm Beach, FL 33401
561-990-1592
Email: ckammerer@kammerermariani.com
Email: jmariani@kammerermariani.com

John B. Williams
Williams Lopatto PLLC
1707 L Street NW, Suite 550
Washington, DC 20036
202-296-1611
Email: jbwilliams@williamslopatto.com

/s/  Gavin C. Gaukroger
Gavin C. Gaukroger, Esq.