## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

ALL-TAG CORP.,                              )
                                            )
      Plaintiff,                      )
                                            )
          v.                      )   Case No. 9:19-mc-80562-WPD
                                            )
CHECKPOINT SYSTEMS, INC.,                   )   Judge William P. Dimitrouleas
                                            )
      Defendant.                      )   Magistrate Judge William Matthewman
                                            )
_____            )

### CHECKPOINT'S REPLY TO ITS MOTION TO COMPEL NON-PARTY
### NEDAP INC. TO PRODUCE ALL DOCUMENTS RESPONSIVE TO SUBPOENA

      Nedap fails to acknowledge that it is not an impartial and irrelevant third party in this case. Nedap has entered into joint ventures with All-Tag to compete against Checkpoint during the relevant time period, its ██████████████████████████████ was being paid by All-Tag while working for Nedap, and after leaving Nedap (after Checkpoint served its subpoena) joined All-Tag as a purported expert "consultant" in this case. Nedap's assertion that it has minimal connection to the issues in this lawsuit is simply false. Checkpoint has a substantial need for Nedap's information relating to its sales of EAS systems and labels in the U.S. as such information is critical to Checkpoint's defense. Without information from Nedap, Checkpoint is denied the opportunity to defend the claims against it.

## I.  NEDAP HAS HIGHLY RELEVANT INFORMATION AS A COMPETITOR AND A PARTNER OF ALL-TAG.

      Checkpoint's Subpoena to Nedap seeks relevant information for *five* separate reasons:

      *First*, Nedap and All-Tag are joint venture partners. Nedap attempts to present itself as a non-party who was dragged into this case by Checkpoint's Subpoena claiming its "only connection to this litigation is that it also sells EAS products in the U.S." (D.E. 13, at 2.) That is incorrect. Nedap partnered with All-Tag in a joint venture to ██████████████████████████. Ex. A. Indeed, the Declarant supporting Nedap's response, who claims "Nedap's involvement in the sale of labels began in 2016," was the same person who ████████████████████████████ ████████████████████████████████████████████████████████████ ██████████. *Id.* ████████████████████████████████████████████

███████████████████████████████████████████████████████████
███████████████████████████████████. Ex. B.

*Second,* Nedap's information is also relevant because All-Tag has now retained Nedap's former ██████████████████████████████████, as a purported expert in this case. At the time Checkpoint served its subpoena, ████████ was employed by Nedap and was also acting as a purported "sales agent" for All-Tag. Following service of the subpoena, ████████ joined All-Tag as a purported expert. Thus, through ████████, All-Tag has access to the very Nedap marketing and sales information that Nedap refuses to give Checkpoint. The only way to level the playing field in this case is to order Nedap to comply with Checkpoint's subpoena.

*Third,* Nedap's involvement in the EAS market is on a much larger scale and for a longer time period than it suggests. Nedap's claim that it rarely sells to Retailers, it was not operating in the United States until its first sale of EAS labels in 2016, and that it first started selling EAS systems in the U.S. market in 2018 are all contradicted by documents already produced by All-Tag. In 2015 and continuing until at least 2018, Nedap and All-Tag competed with Checkpoint and marketed Nedap's RF EAS systems directly to Retailers. *See*, *e.g.*, Ex C (██████████████████████ ██████████████████████████████████████████); Ex. D (████████████ ██████████████████████████████████████████ ██████████████████); Ex. A (██████████████████████████████ ██████████████████████); Ex. E ████████████████████████████ ██████████████████████████████████████████ ██████████████████████). These All-Tag documents, alone, show Nedap's involvement in the EAS market on a much larger scale and for a longer time period than claimed by Nedap.

*Fourth*, the Subpoena seeks information specifically related to Checkpoint's defense of All-Tag's antitrust claims. All-Tag alleges that Checkpoint uses its purported unique ability to sell EAS systems and labels combined with its ability to provide nationwide servicing and installation to leverage its alleged dominance in those areas thereby foreclosing competitors – such as Nedap – from selling RF labels. According to All-Tag, Checkpoint is the only entity that can provide such products and servicing. Information from Nedap is needed to enable Checkpoint to determine Nedap can provide and to whom they are able to provide it because All-Tag claims that only Checkpoint, and no competitor, can offer similar products and servicing. All-Tag, not

Checkpoint, put Nedap's sales, servicing, and marketing of EAS systems and components at issue by claiming that Checkpoint is foreclosing competitors, including Nedap, from opportunities in the Relevant Market. All-Tag specifically identified Nedap as a competitor. Without the specific information requested by the Subpoena, including information enabling Checkpoint to understand Nedap's product offerings, sales in the Relevant markets, and relationships with yet other competitors, Checkpoint is deprived of critical evidence.

As a major competitor of Checkpoint, Nedap sells similar products and, in coordination with its integrators, it represents to Retailers that it can provide nationwide servicing and installation. Information from Nedap relating to its sales, servicing, installation, and marketing, as requested in Requests 1 through 7, is expected to demonstrate that Nedap engages in the very activity All-Tag claims Checkpoint forecloses. For example, Nedap's proposals to Retailers will demonstrate Nedap's product offerings including the various markets Nedap (or its integrators) have attempted to sell EAS products. Nedap's agreements with its integrators and Retailers will demonstrate the relationship between the entities and how EAS manufacturers can partner with integrators to offer the product and service portfolio that All-Tag alleges Checkpoint uses to foreclose competition. The information requested by the Subpoena will further demonstrate that Nedap is selling into the Relevant Markets, as identified by All-Tag, and continues to be a successful competitor.

Checkpoint needs the specific information related to Nedap's sales, servicing, and installation—and not aggregate information—to accurately compare its sales of EAS systems and labels in the subcategories of the Relevant Market to those of Nedap's sales to the same types of entities. Outside of its knowledge that Nedap is a main competitor with a large presence in the United Sates, Checkpoint has no way of knowing whether it is apples-to-apples comparable to Nedap's sales in the Relevant Market. Without this information, Checkpoint is left empty handed in its defense against All-Tag's claims.

*Fifth*, the Subpoena seeks information specifically related to Checkpoint's defense of All-Tag's Lanham Act claims. All-Tag alleges that Checkpoint distributed a study which falsely represented the performance of All-Tag's labels. Nedap conducted its own study in 2015 finding performance issues with All-Tag's labels. But Nedap has not produced any of the correspondence sought by Request 8 relating to that study. Without the correspondence, Checkpoint cannot interpret the reasoning behind the study and its subsequent use.

## II.   NEDAP HAS ACCESS TO THE INFORMATION REQUESTED.

Nedap attempts to throw up two separate roadblocks to the Subpoena: (1) it should not have to produce documents on sales to retailers because it sells through integrators and (2) the information sought is in the hands of Nedap's foreign affiliates.  Neither have merit.

Nedap's claim that it should not have to produce documents on sales to retailers because it distributes its product through integrators ignores Nedap's dual role as a manufacturer and seller of EAS systems and labels.  Indeed, Nedap and All-Tag's joint venture agreement makes no reference to selling through "integrators," as claimed by Nedap in its response, but specifically references ▮▮▮▮▮▮▮▮▮▮ Ex B; *see also* Ex. G (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮).  Nedap does not deny that it has relevant documents—nor could it given the prominent role Nedap plays in the U.S. EAS market.  Nedap would rather require Checkpoint to incur the burden and cost associated with serving and enforcing individual subpoenas on at least five U.S. integrators located throughout the country to obtain evidence that likely resides, in whole or in part, with Nedap.[1] Not only is the burden imposed on Checkpoint to enforce those subpoenas unjustified when Nedap is able to provide the information, but the integrators cannot provide a complete picture of Nedap's activity in the Relevant Markets.

With respect to its foreign affiliates, Nedap is one of many subsidiaries organized under the parent company Nedap N.V. in the Netherlands.  Nedap—the U.S. subsidiary—concedes that information sought from foreign affiliates is within its control—indeed, Nedap has already produced the label studies conducted by its Dutch counterpart.  Further, while Nedap was incorporated in 2013, Nedap's foreign affiliates had widespread sales and marketing efforts over several years in the United States, both before and after 2013.  Indeed, Nedap affiliates were active in the U.S. market since at least 2003.  *See*, Ex. H (2013 article indicating that "several Nedap business units have been acting on the American market for well over a decade").  Nedap cannot object to the Subpoena by simply hiding behind its most recent U.S. venture.  Because Nedap is indistinguishable from its foreign affiliates, Nedap must produce information from its affiliates. *See*, *e.g.*, *Appleton Papers Inc. v. George A. Whiting Paper Co.*, Case No. 08-16, 2009 WL 2408898, at * 1 (E.D. Wis. July 31, 2009) (ordering production of documents from four affiliated

---

[1] Checkpoint has already served five subpoenas on integrators and anticipates having to enforce those subpoenas in multiple courts because the integrators have objected on several grounds, including obligations they claim to have with Nedap.

companies where corporations were members of "a labyrinthine group of corporations" with a common parent).

## III. CHECKPOINT'S SUBPOENA IS NOT UNDULY BURDENSOME.

Checkpoint made several efforts to ease the burden on Nedap, such as engaging in multiple conference calls with Nedap's attorney over the course of several months, providing examples of the documents sought, and pointing to specific competitive EAS bids involving Nedap. Checkpoint has endeavored to minimize the burden on Nedap, yet Nedap still refuses to produce the information sought.

To the extent Nedap's estimation of the time and resources necessary to comply with the Subpoena is accurate, Checkpoint would work with Nedap to minimize the burden in collecting responsive material, allowing for the production of the information in the format in which it is kept, and minimizing any materials Nedap would have to review.

## IV. NEDAP'S ALLEGED "PROPRIETARY AND CONFIDENTIAL" INFORMATION IS SUFFICIENTLY PROTECTED FROM DISCLOSURE BY THE STIPULATED PROTECTIVE ORDER.

Nedap claims it cannot produce the information requested by the Subpoena because it contains propriety and confidential business information that is subject to non-disclosure agreements. However, this Court can order disclosure of such confidential information if Checkpoint demonstrates a substantial need for the information. Fed. R. Civ. P. 45(d)(3)(C). Because Checkpoint has articulated the specific, substantial need for Nedap's confidential business information and even provided examples to support its need, Nedap should be required to disclose its purported confidential information. *Contra*, *TYR Tactical, LLC v. Protective Prods. Enterprises, LLC*, No. 15-CIV-61741, 2016 WL 106473134, at *2-3 (S.D. Fla. Mar. 8, 2016) (non-party not required to produce confidential information in response to subpoena where seeking party failed to establish relevance of information outside of mere speculation). Furthermore, as stated in the Motion, the existence of the Stipulated Protective Order provides conditions under which Nedap can produce its alleged confidential information and preclude Checkpoint and All-Tag from obtaining it, which sufficiently protects Nedap's proprietary information. *See*, *e.g.*, *Direct Purchaser Class Plaintiffs v. Apotex Corp.*, Case No. 16-62492-MC-ZLOCH, 2017 WL 4230124, at *5 (S.D. Fla. May 15, 2017) (ordering disclosure of competitor's information pursuant to protective order in antitrust case).

Moreover, despite Nedap's claims of confidentiality, Nedap provided similar information freely during the course of several years to All-Tag prior to entering into their joint venture agreement. *See*, Motion, p. 2. Because the information requested is relevant and Checkpoint has demonstrated a substantial need, as discussed above, Nedap cannot continue to avoid compliance with the Subpoena on this basis. *Eastwood Enterprises, LLC v. Farha*, Case No.: 8:07-CV-1940-T-33EAJ, 2010 WL 11508180, at *3 (M.D. Fla. Apr. 26, 2010) (requiring the disclosure of non-party's trade secrets due to demonstration of substantial need). As a result, Nedap should be ordered to comply with the subpoena.

## CONCLUSION

WHEREFORE, Defendant Checkpoint Systems, Inc. respectfully requests that the Court grant its Motion to Compel and requests the entry of an order compelling Nedap, Inc. to produce all documents responsive to the Subpoena, overruling Nedap, Inc.'s objections thereto, and for such further relief as this Court deems just and proper.

Dated: May 10, 2019

/s/ Gavin C. Gaukroger
One of the attorneys for Checkpoint Systems, Inc.

Gavin C. Gaukroger
Charles H. Lichtman
BERGER SINGERMAN LLP
350 East Las Olas Boulevard, Suite 1000
Fort Lauderdale, Florida 33301
Tel: (954) 525-9900
Fax: (954) 523-2872

Robert J. Palmersheim (*pro hac vice*)
Anand C. Mathew (*pro hac vice*)
Julie M. Mallen (*pro hac vice*)
PALMERSHEIM & MATHEW LLP
401 N. Franklin Street, Suite 4S
Chicago, Illinois 60654
Tel: (312) 319-1791
Fax: (312) 878-2890
rjp@thepmlawfirm.com
acm@thepmlawfirm.com
jmm@thepmlawfirm.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 10, 2019, a true and correct copy of the foregoing was filed with the Clerk of the Court using CM/ECF which will generate and serve a Notice of Electronic Filing to the following to the attorneys listed below, and sent via email to counsel for non-party Nedap, Inc., Christopher Naveja, Esq., Saul Ewing Arnstein & Lehr, LLP, 161 North Clark Street, Suite 4200, Chicago, IL 60601, (312)876-7140, Christopher.naveja@saul.com.

Damon Suden
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, NY 10178
212-808-7800
Email: dsuden@KelleyDrye.com

Julian Solotorovsky
Matthew C. Luzadder
KELLEY DRYE & WARREN LLP
333 West Wacker Drive
Chicago, IL 60606
312-857-7070
Email: jsolotorovsky@KelleyDrye.com
Email: mluzadder@kelleydrye.com

William A. MacLeod
KELLEY DRYE & WARREN LLP
3050 K Street NW, Suite 400
Washington, DC 20007
202-342-8811
Email: wmacleod@kelleydrye.com

Christopher W. Kammerer
John F. Mariani
KAMMERER MARIANI PLLC
1601 Forum Place, Suite 500
West Palm Beach, FL 33401
561-990-1592
Email: ckammerer@kammerermariani.com
Email: jmariani@kammerermariani.com

John B. Williams
WILLIAMS LOPATTO PLLC
1707 L Street NW, Suite 550
Washington, DC 20036
202-296-1611
Email: jbwilliams@williamslopatto.com

*/s/ Gavin C. Gaukroger*